ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KEVIN YEH (CABN 314079)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-4063
    Fax: (415) 436-7234
    kevin.yeh@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-cr-337 JD |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| JULEISY MONCADA-FLORES, | Date: October 20, 2023<br>Time: 10:30 a.m.<br>Court: Hon. Lisa J. Cisneros |
| Defendant. | |

## I.   INTRODUCTION

Not only has Juleisy Moncada-Flores conscripted her underage sister into regularly dealing drugs with her on street corners in the Tenderloin, and continued to traffic narcotics herself even after her sister was arrested for doing so while under her watch, Moncada-Flores has also brought her two-year-old son along with her to at least one drug sale.  When officers searched her house, they found—in addition to a large amount of narcotics—a blender with various colored stains, mannitol (a common cutting agent for fentanyl), various dyes, multiple digital scales, a cutting tool, and a large hydraulic press—all tools likely used for processing fentanyl.  Her brazenness shows that she is a danger to her two young children, her teenage sister, and the San Francisco community in which she peddles fentanyl,

heroin, cocaine base, and methamphetamine. As a Honduran citizen who has no other apparent employment or ties to the community, and who has actually said that she would attempt to return to Honduras after her arrest, Moncada-Flores is also a flight risk. She cannot overcome the presumption that there is no condition or combination of conditions that can provide for the safety of the community or secure her appearance before the Court. Accordingly, the government respectfully requests that she be detained pending trial.

## II.   FACTUAL BACKGROUND

### A.   Moncada-Flores's Background and Prior Arrest

Juleisy Kristal Moncada-Flores is a 22-year-old narcotics dealer who lives in Oakland and sells drugs in the San Francisco Tenderloin area. She is the mother of a two-year-old and a six-year-old, and has a boyfriend of approximately nine months who may also be engaged in drug trafficking.

On September 14, 2020, Moncada-Flores was arrested while selling narcotics in the Tenderloin with another male. Together, they were found with 31.5 grams gross of suspected fentanyl; 11.8 grams gross of suspected heroin; and 3.7 grams gross of suspected methamphetamine. She was charged with violating California Health and Safety Code 11351 (possessing a controlled substance with intent to sell) and 11378 (possessing methamphetamine with intent to sell). Moncada-Flores was referred to a diversion program and the case was dismissed.

### B.   July 13, 2023 Controlled Purchase

Over a period of several months around mid-2023, San Francisco Police Department officers began surveilling and investigating Moncada-Flores and S.M. (Moncada-Flores's 16-year-old sister) around 7th Street, near Market and Mission Streets, in San Francisco—an area known for narcotics trafficking. Both have prior arrests for state narcotics offenses in San Francisco and continued to sell drugs together until their respective arrests. Officers began engaging in controlled purchases of narcotics from them.

On July 13, 2023, at the corner of Market and 7th Streets, an undercover officer approached Moncada-Flores, who was with her sister, and asked if she had any "yellow"—a street term for fentanyl. Moncada-Flores asked how much he wanted and the officer indicated that he wanted $40 worth. The undercover officer handed Moncada-Flores $40. S.M. spoke with Moncada-Flores and took the $40

from her. She opened a bag apparently containing multiple packaged narcotics and handed two chunks of suspected fentanyl to the officer. The officer asked for, and got, Moncada-Flores's phone number for future transactions. Later, the suspected fentanyl was determined to weigh 2.98 grams net and confirmed by lab tests to contain fentanyl.

Officers ran electronic queries of Moncada-Flores's name and cell phone number, and found a residence linked to her in Oakland. Officers conducted surveillance at that address and observed Moncada-Flores and her sister walk from the house to a black BMW, in which they drove away. A query on the BMW's license plate indicated that the car was registered to Moncada-Flores and the Oakland residence. Officers also believe that S.M. lives at the same residence.

### C.     July 19, 2023 Controlled Purchase

On July 19, 2023, officers surveilling Moncada-Flores's residence and saw S.M. leave the house and climb into a white sedan with an unknown driver parked nearby. She left the car less than a minute later and went back to the house. Agents believe that she and the driver conducted a drug transaction. Later that day, officers saw Moncada-Flores and her sister drive off in the BMW to a residence on Edes Avenue in Oakland, where S.M. walked out of sight and returned with a black plastic bag. The two women then drove to San Francisco, where they parked at the Cova Hotel garage in the Tenderloin and walk to Ellis and Hyde Streets, where they engaged in narcotics sales with multiple individuals. S.M. was observed placing narcotics back into the black plastic bag, leading officers to believe that the bag contained narcotics when it was picked up at Edes Avenue.

Later that afternoon, an undercover agent texted with Moncada-Flores to arrange a narcotics sale. That evening, the undercover officer called Moncada-Flores, who told him she was at 7th and Mission Streets. The undercover officer approached Moncada-Flores and her sister, who were seated on the retaining wall of the federal building. The officer gave Moncada-Flores $190 in exchange for one ounce of methamphetamine and an "8 ball" of fentanyl." Later, the suspected fentanyl was determined to be 3.79 grams net and confirmed by lab tests to contain fentanyl; the suspected methamphetamine was determined to be 27.22 grams net and confirmed by lab tests to contain methamphetamine.

On July 26, 2023, officers installed a tracker on Moncada-Flores's BMW pursuant to a warrant. The tracker supports that Moncada-Flores lives where officers believed to be her residence, and

commutes to San Francisco and Sacramento multiple times a week. Officers also obtained a search warrant for cell phone location data and historical location data on Moncada-Flores's phone.

On August 1, 2023, officers surveilling Moncada-Flores's residence again observed S.M. leave the house, enter a car briefly, and then return to the house, suggesting a drug transaction.

On August 10, 2023, tracker data showed the BMW parked in the Tenderloin. An officer saw Moncada-Flores and her sister selling drugs around 7th and Market Streets. Surveillance photos were taken of them doing so.

On August 12, 2023, tracker data showed the BMW parked in the Tenderloin, and officers observed Moncada-Flores and her sister around 7th and Market Streets. S.M. was arrested for possession of narcotics, during which officers seized a digital scale, money, suspected fentanyl, suspected methamphetamine, suspected cocaine base, and two cell phones. A state court ordered her detained.

On August 13, 2023, tracking data showed the BMW driving to Sacramento, where it traveled 12 times over a span of 22 days. On most of these trips, the BMW stopped at a particular hotel, including on this trip, leading officers to believe that drugs may be stored or manufactured there. The BMW then drove back to the residence on Edes Avenue, where a woman exchanged a white or cream colored bag with Moncada-Flores for a small pink bag that officers recognized as one that she carries in the Tenderloin, leading officers to believe that the bags contained narcotics. A records check of the Edes Avenue residence associates it with an individual who has a known history of narcotics trafficking in San Francisco and Oakland.

On August 15, 2023, a ping warrant was issued for Moncada-Flores's cell phone. The location data gathered corroborate the BMW tracking data and her drives to Edes Avenue, San Francisco, and Sacramento.

**D.    August 22, 2023 Controlled Purchase, Arrest, and Indictment**

Officers eventually planned a takedown of Moncada-Flores. On August 21, 2023, an undercover officer contacted Moncada-Flores by text message to arrange a narcotics sale for one ounce of "clean" fentanyl and one ounce of methamphetamine for the next day.

The next day, on August 22, 2023, SFPD officers, assisted by federal agents, executed state

search warrants for the persons of Moncada-Flores and S.M.; the BMW; a Dodge vehicle associated with Moncada-Flores; her residence; and the Edes Avenue residence. Officers began their operation by surveilling Moncada-Flores and tracking her cell phone. She was seen driving her car in Oakland with her two-year-old son in the rear. The undercover officer texted Moncada-Flores and confirmed his plans to purchase from her one ounce each of methamphetamine and fentanyl in San Francisco later that day. They settled on prices and continued texting and calling each other. Officers observed that Moncada-Flores briefly went to her home in Oakland and then drove to San Francisco. After reaching the designated meeting spot, she called the undercover officer and told him she was there. An arrest team moved in, ordered Moncada-Flores out of the car, and detained her. Her cell phone was seized. Officers searched her and found 29.2 grams gross (approximately one ounce) of suspected methamphetamine and 28.9 grams gross of suspected fentanyl. (Later TruNarc testing indicated that the drugs were presumptive positive.) Her son was again in the backseat of her car when she was arrested.

     Moncada-Flores was Mirandized in Spanish and agreed to speak with officers in a BWC-recorded interview. She confirmed her name, birthday, cell phone number, and address, where she says she has lived for about six months. She has been present in the United States at various points since she was nine-years-old and came to Houston from Honduras in 2018. She moved to the Bay Area around 2019. Moncada-Flores confirmed the prices that she pays and sells for fentanyl, methamphetamine, cocaine base, and heroin. She claimed to buy drugs from different people on the street and one particular Mexican, but has no further information on them. She indicated that her boyfriend of approximately eight months directed her to do drug drops in different places, including Sacramento several times a week. She also admitted to selling narcotics at 7th Street and Market for the last 4–5 months. She admitted that she all of the narcotics in her house were hers except for the fentanyl, which she claimed belonged to her boyfriend.

     Moncada-Flores's residence was searched. In the master bathroom, an officer found 148.8 grams gross of suspected fentanyl (later tested as clear, mannitol). In the kitchen, officers found a backpack with 7.4 grams gross of suspected fentanyl (later tested presumptive positive). In the laundry room, officers found 37.8 grams gross of suspected fentanyl (later tested "inconclusive"); 74.9 grams gross of suspected methamphetamine (later tested presumptive positive); 17.3 grams gross of suspected

heroin (later tested "inconclusive"); and 10.2 grams gross of suspected cocaine base (later tested presumptive positive); officers also found a blender with various colored stains, a canister of Mannitol, various dyes, multiple digital scales, and a cutting tool. In the backyard was a large hydraulic press. All these items are consistent with the manufacturing and packaging of narcotics.

On October 3, 2023, a federal grand jury returned an indictment charging Moncada-Flores with five counts: (1) distribution of a mixture and substance containing a detectable amount of fentanyl on July 13, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) distribution of a mixture and substance containing a detectable amount of fentanyl on July 19, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (3) distribution of a mixture and substance containing a detectable amount of methamphetamine on July 19, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (4) possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine on August 22, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (5) possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base on August 22, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

### III. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to

drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

When the case involves an offense for which a maximum term of imprisonment for ten years or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

**IV.     ARGUMENT**

**A.     Moncada-Flores Faces a Rebuttable Presumption in Favor of Detention.**

Moncada-Flores is charged by indictment with five counts of violating 21 U.S.C. § 841(a)(1), (b)(1)(C), which carries a maximum term of imprisonment of more than ten years under the Controlled Substances Act. Thus, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure her appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, Moncada-Flores will be unable to overcome this presumption.

**B.     Moncada-Flores Cannot Overcome the Presumption that She Is a Danger to the Community.**

Every drug trafficker is a danger to the community, but Moncada-Flores is an especial menace because she is a danger to her own family, which consists of three minors in her care: a 16-year-old

sister, a two-year-old son, and a six-year-old child.  Moncada-Flores drives with her sister from Oakland to San Francisco's Tenderloin area—one of its most dangerous areas—to sell drugs with her.  Needless to say, selling drugs on the street is a highly dangerous activity even for adult men, to say nothing of a teenage girl.  But Moncada-Flores appears to have no qualms about that, allowing her sister to both handle cash and to hold the bags of drugs too.  They do this in the open and at late hours, including just outside the Seventh Street Federal Building.  Moncada-Flores also allows her sister to climb into cars on her own to complete suspected drug pickups/drop-offs right outside their home.

      Moncada-Flores is no better with her own children.  She took her two-year-old son along with her to San Francisco to complete a drug deal—the one that led to her arrest.  One can only guess how many other times she has done something similar.  When she is not bringing them along on drug deals, Moncada-Flores appears to drop her children off at the Edes Street residence before her commutes into the Tenderloin.  On the day search warrants were executed on her residence and the Edes Street residence, officers found the following:  906.6 grams gross of presumptive positive fentanyl (enough fentanyl to potentially kill *over 450,000* individuals[1]); 159.5 grams gross of presumptive positive cocaine base; 14.1 grams gross of acetaminophen (paracetamol) with the possibility of narcotics; 98.6 grams gross of inconclusively tested Xanax pills; and 4.8 grams gross of presumptive positive cocaine base.  They also located digital scales, plastic bags, several thousand U.S. dollars in cash, and dyes.  Officers also found a semi-automatic pistol in an open trash can in the front yard, later determined to be unregistered.  Ten unfired cartridges were also found inside.  In a hall closet, officers located various firearm parts, including one shotgun fore-end, one shotgun bolt, a spring, and a circular plastic piece of a fore-end.  While officers did not link any of the contraband at Edes Street to Moncada-Flores, the fact that she routinely placed her children in a residence where massive quantities of drugs were kept and firearm parts were strewn about shows that she endangers their welfare, directly as a result of her drug-dealing activities.  On top of this, she keeps a significant amount of drugs in her own house and apparently dyes and packages fentanyl in the same building where her two very young children live.

      What is especially disturbing is how unrepentant Moncada-Flores appears to be.  When her

---

[1] Two milligrams of fentanyl is a potentially lethal dose.  U.S. Drug Enforcement Admin., Facts About Fentanyl (https://www.dea.gov/resources/facts-about-fentanyl).

UNITED STATES' DETENTION MEMO          8
3:23-cr-337 JD

underaged sister was arrested for narcotics trafficking on August 12th, one might hope that Moncada-Flores would finally be deterred and turn a new leaf. On the contrary, Moncada-Flores was back at it the very next day, as tracker data indicated that she drove to Sacramento for a suspected drug stop. Even if there were any doubt about why she went to Sacramento, Moncada-Flores was certainly ready to sell fentanyl and methamphetamine to the undercover officer (with her toddler in tow) a little over a week later, demonstrating her utter disregard for the law and the consequences of her actions.

It goes without saying that Moncada-Flores sold drugs that have devastated, and continue to devastate, the community. Indeed, Moncada-Flores admitted in her interview that she knew fentanyl was deadly—she carried Narcan in her car—yet she continued dealing it and other drugs. Her willingness to put not only the public—but her own sister and children—in harm's way shows amply that she is a danger to the community and that no conditions can mitigate it.

**C.     Moncada-Flores Cannot Overcome the Presumption that She Is a Flight Risk.**

After she was arrested, an officer reported that Moncada-Flores stated, in substance, that she should send her children back to Honduras, and that she should also simply "hop on a plane" to join them. This sentiment is unsurprising because Moncada-Flores has a strong incentive to flee due to the severe punishment she could face if convicted. She is currently charged for C-weight amounts of fentanyl, methamphetamine, and cocaine base, but the amount of drugs found in her possession (depending on lab results, which are pending) could lead to her being charged under 21 U.S.C. § 841(b)(1)(B), which carries a five-year mandatory minimum. The government also anticipates her Guidelines range to be substantial. Furthermore, the weight of the evidence—though the least important factor in deciding detention—is strong. For the first time, Moncada-Flores is facing real consequences for her drug trafficking, which creates a strong incentive for her to flee immediately if released. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (stating that strong evidence of guilt "makes it more likely that he will flee").

Given her immigration status, the absence of apparent ties to the community in the United States (including lack of employment), the seeming lack of any viable sureties, and the possibility of a lengthy term of incarceration, Moncada-Flores has a strong incentive to flee if she is released. She is a flight risk and no conditions are likely to eliminate the possibility of nonappearance.

UNITED STATES' DETENTION MEMO                 9
3:23-cr-337 JD

## V. CONCLUSION

Moncada-Flores cannot overcome the presumption that there are no conditions that will reasonably ensure the safety of the community or assure her appearance at court proceedings, and she should be detained pending trial.

DATED: October 16, 2023                                      Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


*/s/ Kevin Yeh*_____
KEVIN YEH
Assistant United States Attorney